UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CA 04 435T

SSJ ENTERPRISES, LLC and
STREET SEARCH, LLC, Plaintiffs

vs.

ICOA, INC., GEORGE
STROUTHOPOULOS, and ERWIN
VAHLSING, JR., Defendants

C.A. No. 2004-

# COMPLAINT

## JURISDICTION

1. Plaintiff SSJ Enterprises, LLC ("SSJ") is a New York limited liability company with its principal offices in Brooklyn, New York.

2. Plaintiff Street Search, LLC ("Street Search")is a New Jersey limited liability company with its principal offices in Rumson, New Jersey.

3. Defendant ICOA, Inc. ("ICOA') is a Nevada corporation with its principal offices in Warwick, Rhode Island.

4. Defendant George Strouthopoulos is. a citizen of Rhode Island.

5. Defendant Erwin Vahlsing, Jr. is a citizen of Rhode Island.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that this is an action between citizens of different states, and the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs.



①

## GENERAL ALLEGATIONS

7. SSJ is in the business of investing in securities of public and private companies and in real estate. SSJ also provides consulting services for corporate financings, acquisitions, marketing and other similar natters for both public and private companies.

8. Street Search is also in the business of investing in securities of public and private companies and in real estate and also provides consulting services for corporate financings, acquisitions, marketing and other similar natters for both public and private companies.

9. ICOA is a neutral-host broadband wireless Internet network ("Wi-Fi") provider -- servicing high traffic locations like airport terminals and restaurants – whose shares are publicly traded on the OTC Bulletin Board. Defendant Strouthopoulos is its CEO, defendant Vahlsing its CFO, and both are substantial shareholders.

10. By 2003, ICOA was in such financial straits that its auditors, in their report on its financial statements for the fiscal year ended December 31, 2002, raised "substantial concerns" about its ability to continue as a going concern. To survive, ICOA would need to actively pursue new debt and/or equity financing.

11. Strouthopoulos and Vahlsing enlisted SSJ and Street Search to assist in ICOA's struggle to survive. They asked SSJ and Street Search to advise and assist ICOA with management and strategic planning, including capital financing, marketing, and acquisitions, all with the goal of providing ICOA with adequate working capital, improved market capitalization, and strong operating cash flows.

12. ICOA, SSJ and Street Search entered into a written Services Agreement dated as of October 20, 2003, a copy of which is attached as Exhibit A ("Agreement").

13. Under this Agreement, SSJ and Street Search were to provide consulting services, including the "review of the structure of proposed financings, proposed acquisitions, acquisition of locations, marketing of services, and such other matters as requested by [ICOA]." Such consulting service efforts would focus on obtaining new debt and equity funding, and improving marketing, to relieve ICOA's financial distress.

14. The Agreement required ICOA to compensate plaintiffs for their services by issuing to them 30 million common shares of ICOA in four stages ("traunches"), as various threshold levels of funding were achieved.

15. The agreed schedule was 6 million shares upon the first traunch of $400,000, another 4.5 million shares upon the second traunch of $300,000, another 4.5 million shares upon the third traunch of $300,000, and 15 million shares upon the fourth traunch of $1.2 million.

16. As further compensation, plaintiffs were to receive three year warrants for 40 million additional ICOA common shares, exercisable for 10 million shares at each price of $0.25, $0.50, $0.75, and $1.00 per share.

**COUNT ONE**
(Breach of Contract/Specific Performance against ICOA)

17. Plaintiffs have fulfilled all their obligations under the Agreement and are entitled to all compensation specified therein.

18. Specifically, plaintiffs introduced ICOA to a venture capital firm, Cornell Capital Partners, LP.

19. In March 2004, ICOA and Cornell entered into a Standby Equity Distribution Agreement (SEDA) in the amount of $5,000,000. ICOA can use this flexible equity facility at its sole discretion to gain access to up to $5,000,000 over a two-year period. This facility alone more than fulfils all requirements under the Agreement to entitle plaintiffs to the issuance of 30 million ICOA common shares and the warrants for an additional 40 million shares.

20. Simultaneously with the SEDA, ICOA and Cornell entered into a Securities Purchase Agreement, which obligated Cornell to purchase $550,000 of three year secured convertible debentures to provide ICOA with bridge financing. Advances were made under that agreement in the amounts of $350,000 on March 19, 2004 and $200,000 on May 10, 2004.

21. During June, 2004, ICOA raised another $726,880 from Cornell under a promissory note.

22. Plaintiffs also made contact, on behalf of ICOA, with firms such as Advest, Gruntal, Paine Webber, Legg Mason, Scott & Stringfellow, First Avantus, Middlegate Securities, Wachovia Securities, and Bear Stearns and others resulting in additional market makers for the equity and debt securities of ICOA.

23. Moreover, investors plaintiffs have brought in have purchased some 25 million shares of ICOA common stock at an average price of $.08 per share, increasing the share price and market capitalization of ICOA, to ICOA's great financial benefit.

24. Plaintiffs have also provided and distributed corporate profiles to market makers, investors, brokers, consultants, small capital funds, financial advisors and selected money managers all in an effort to promote ICOA's available debt and equity.

25. Plaintiffs also actively worked with ICOA's management to create a new corporate website, so as to permit increased shareholder contact, and to create a new company "brand name" that will more readily appeal to and attract consumers of ICOA's services.

26. Despite plaintiffs' successful efforts on ICOA's behalf, with results achieved that far exceed any requirements of the Agreement, ICOA has refused to issue any of the 30 million common shares and 40 million warrants due plaintiffs under the Agreement.

27. ICOA is thus in flagrant breach of the Agreement and has completely deprived plaintiffs of any benefit from their bargain, even while retaining the benefits of that bargain for itself and its principal shareholders, Strouthopoulos and Vahlsing.

28. ICOA common shares, even though they are publicly traded, are so thinly traded and so relatively unavailable in the quantities promised to plaintiffs that the shares are in effect unique. The Agreement is therefore specifically enforceable in equity.

29. ICOA warrants, on the terms promised plaintiffs cannot be purchased on the market and are therefore unique and the contract to issue them to plaintiffs is specifically enforceable in equity.

30. In the premises, plaintiffs are entitled to judgment specifically enforcing the Agreement and directing the issuance to them of 30 million shares of ICOA common and 40 million ICOA warrants on the terms alleged herein.

31. Moreover, upon information and belief, ICOA has diluted its common stock by 50% since the date of the Agreement, so the number of shares and warrants to

which plaintiffs are entitled should likewise be increased by 50% to assure them the full benefit of their bargain.

32. ICOA's breach of contract has also caused plaintiffs to suffer consequential damages of at least $20 million.

**COUNT TWO**
**(Breach of Oral Contract/Specific Performance against ICOA)**

33. Following execution and commencement of performance of the Agreement, ICOA requested additional assistance from Plaintiffs with ICOA's branding and marketing strategy. The parties entered into an oral agreement that plaintiffs would assist ICOA with its branding and marketing strategy in exchange for issuance to plaintiffs of an additional 10 million shares of ICOA common and three year warrants for the purchase of another 20 million shares at the rate of 5 million shares each at $.25, $.50, $.75, and $1.00, beyond the shares and warrants previously provided for in the Agreement.

34. In reliance on this oral contract, plaintiffs devoted substantial time and effort to creating a new business plan, including a branding and marketing strategy, for ICOA, whose name has no apparent connection with its markets.

35. In fulfillment of this oral contract, plaintiffs among other things created and provided to ICOA a list of potential new names (and advised the company to include "WiFi" in whatever name and logo the company would choose) for the company that would more readily connect it to its markets, developed a branding strategy for the company, identified potential opportunities for creating protectable intellectual property, made specific suggestions for reorganizing company management and for the deployment

of the company's new brand and advised the company with respect to the upcoming opportunities presented by the broadened communication capabilities of WiFi and WiMAX.

36. ICOA management has embraced plaintiffs' business plan and, upon information and belief, is preparing for a shareholder vote on a name change for the company. ICOA has also begun to implement the management changes and business, advertising , and marketing and branding strategies outlined for them by plaintiffs.

37. Despite the substantial performance of the oral contract by plaintiffs, ICOA has refused to issue any of the 10 million shares or 20 million warrants due plaintiffs under the contract, thus depriving plaintiffs of the benefit of their bargain, while retaining the benefits conferred on ICOA by plaintiffs for its own enrichment and that of Mssrs. Strouthopoulos and Vahlsing.

38. As with the Agreement, plaintiffs' remedy at law is inadequate, so plaintiffs are entitled to specific performance of the oral contract.

39. Moreover, upon information and belief, ICOA has diluted its common stock by 50% since the date of the oral contract, so the number of shares and warrants to which plaintiffs are entitled should likewise be increased by 50% to assure them the full benefit of their bargain.

40. ICOA's breach of contract has also caused plaintiffs to suffer consequential damages of at least $20 million.

**COUNT THREE**
**(Fraud as Against ICOA)**

41. At the time ICOA entered into the Agreement and oral contract with plaintiffs, it never intended to honor any of its obligations under those agreements and

concealed such intention from plaintiffs. ICOA misrepresented its present intent at the time it entered into such agreements with plaintiffs.

42. Further, during its negotiations with the plaintiffs for the Agreement and the oral contract, and ultimately at the time it entered into such agreements, ICOA misrepresented its intentions to plaintiffs relative to potential equity or debt providers by failing to inform plaintiffs of its intent to conceal its obligations to plaintiffs and from such financing providers, knowing that such concealment would jeopardize ICOA as a going concern and affect its ability to honor its obligations to plaintiffs.

43. Ultimately, upon information and belief, the agreements with plaintiffs were concealed from Cornell Capital, placing ICOA in jeopardy and, along with it, ICOA's ability to honor its contractual obligations with the plaintiffs.

44. ICOA's agreements with plaintiff's were also concealed from other potential and actual debt and equity providers, further jeopardizing ICOA's ability to fulfill its contractual obligations to plaintiffs.

45. ICOA made all such misrepresentations and omissions to plaintiffs knowing them to be untrue and intending to deceive the plaintiffs.

46. Plaintiffs relied on ICOA's misrepresentations to their detriment and were induced to take action, including entering into and fully performing two separate agreements with ICOA.

47. Due to ICOA's fraud, plaintiffs have suffered damages exceeding $20 million.

**COUNT FOUR**
**(Fraud against Strouthopoulos and Vahlsing)**

48. During the negotiations of the Agreement and the oral contract, ICOA was represented by Strouthopoulos and Vahlsing, who acted in both their corporate capacities and in their individual capacities as principal shareholders of ICOA.

49. Strouthopoulos and Vahlsing caused ICOA to enter into the Agreement and the oral contract knowing all along that they intended to frustrate ICOA's performance of those agreements, in effect misappropriating plaintiffs' performance for their own gain as the major shareholders of ICOA. Strouthopoulos and Vahlsing misrepresented and concealed their intentions from plaintiffs with the intent and effect of deceiving plaintiffs and inducing their reliance.

50. Plaintiffs in fact relied to their detriment on the apparent good faith of Strouthopoulos and Vahlsing in entering into and performing contracts with ICOA.

51. Plaintiffs have suffered damages exceeding $20 million.

WHEREFORE, plaintiffs demand judgment against ICOA for specific performance of the Agreement and the oral contract, with appropriate relief against dilution, and against all defendants for $20 million, plus interest, costs, and reasonable attorneys fees.

Plaintiffs demand trial by jury on all claims and issues so triable.

By their Attorneys,

Howard E. Walker (#1085)
P.O. Box 299
Hope Valley, Rhode Island 02832
Tel. (401) 539-6767
Fax. (401) 539-0066
E-mail: hewlaw@direcway.com

Dated: October 8, 2004

2/24/04 Original signed contract

## SERVICES AGREEMENT

THIS SERVICES AGREEMENT, dated as of October 20, 2003 (the "Agreement") by and between ICOA, Inc., a Nevada Corporation (the "Company"), and SSJ Enterprises, LLC, a Limited Liability Corporation with offices at 992 East Seventh St., Brooklyn, NY 11230 and Street Search, LLC, a Limited Liability Corporation with offices at 145 Bingham Ave., Rumson, NJ 07760 (the "Consultants") (individually, a "Party", collectively, the "Parties").

## RECITALS

WHEREAS, Consultants have provided and shall provide certain consulting services ("Services") including but not limited to review of the structure of proposed financings, proposed acquisitions, acquisition of locations, marketing of services, and such other matters as requested by the Company.

WHEREAS, in connection with and in consideration for such Services, the Company has agreed to compensate Consultant in shares of common stock in lieu of cash payment.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein, the Parties agree as follows:

1. TERM.

This Agreement is for a period of one year and will automatically renew for additional one year periods unless cancelled in writing by either party upon 30 days prior written notice..

2. COMPENSATION.

2.1 In consideration of the Services, the Company agrees to compensate the Consultant with 30,000,000 shares (the "Shares") (stock 144) of common stock of the Company.

2.2 The Company shall cause the issuance of the Shares in accordance with the following Schedule and based on approval by shareholders of the increased limit on authorized shares per the proxy previously filed by the Company:

2.2.1 Receipt by the Company of first traunch of $400,0000 – 6.0 million shares
2.2.2 Receipt by the Company of second traunch of $300,000 – 4.5 million shares
2.2.3 Receipt by the Company of third traunch of $300,000 – 4.5 million shares
2.2.4 Receipt by the Company of fourth traunch of $1.2 million – 15 million shares

2.3 The Company will, based on approval by shareholders of the increased limit on authorized shares per the proxy previously filed by the Company, also issue 3 year Warrants for the purchase of 40.0 million common shares at the following prices:

2.3.1 10.0 million shares at $0.25 per share
2.3.2 10.0 million shares at $0.50 per share
2.3.3 10.0 million shares at $0.75 per share
2.3.4 10.0 million shares at $1.00 per share



*EXHIBIT A*

2.4 It is expressly understood and agreed that *in* connection with the Services to be performed by the Consultant, the Consultant shall be solely responsible for any and all taxes arising from the consulting fees paid to the Consultant hereinafter.

3. **CONFIDENTIALITY**

3.1 The Consultant shall not disclose any non-public information obtained by the Consultant from the Company including, without limitation, information relating to this Agreement. The provisions of this Section shall not apply to information generally known to the public or the trade, information available in trade or other publications and information available without breaching the provisions of this Agreement.

3.2 This Section shall survive the expiration or termination of this agreement.

4. **REPRESENTATIONS AND WARRANTIES.**

4.1 The Consultant hereby represents and warrants to the Company that:

4.1.1 he has full legal capacity to enter into this Agreement and to provide the Services hereunder without violation or conflict with any other agreement or instrument to which the Consultant is a party or may be bound;

4.1.2 in the course of performing the services hereunder, the Consultant will not infringe the patent, trademark or copyright (collectively, "Intellectual Property") of any third party;

4.1.3 the execution, delivery and performance of this Agreement does not and will not conflict with, violate or breach its constituent documents or any agreement (including, without limitation, any other distribution agreement), decree, order or judgment or any law or regulation to which it is a party or subject or by which it or any of its properties or assets is bound.

5. **RELATIONSHIP OF THE PARTIES**

The Consultant shall be an independent contractor and the Consultant shall not be considered in any manner an employee of the Company and the relationship of the Company and the Consultant shall not in any manner create an employer-employee relationship between the parties.

6. **NO WAIVER.**

The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or of any other provision.

7. **ENTIRE AGREEMENT.**

This Agreement constitutes the entire Agreement and understanding of the parties hereto.

8. **AMENDMENTS.**

No amendment, modification or waiver of any provision herein shall be effective unless in writing, executed by each of the parties hereto.

9. **GOVERNING LAW JURISDICTION.**

This Agreement shall be construed, interpreted and enforced in accordance with and shall be governed by the laws of the State of Rhode Island applicable to agreements made and to be performed entirely therein. In the event that either Party hereto shall take legal action to enforce any of the provisions of this Agreement, the Parties agree that the exclusive jurisdiction for such legal action shall be the state courts of Rhode Island or the federal courts residing in the State of Rhode Island.

10. **BINDING EFFECT.**

This Agreement shall bind and inure to the benefit of the Parties, their successors and assigns.

11. **NOTICES.**

Any notice under the provisions of this Agreement shall be deemed given when received and shall be given by hand, reputable overnight courier service or by registered or certified mail, return receipt requested, directed to the addresses set forth above, unless notice of a new address has been sent pursuant to the terms of this section.

12. **UNENFORCEABILITY; SEVERABILITY.**

If any provision of this Agreement is found to be void or unenforceable by a court of competent jurisdiction, the remaining provisions of this Agreement shall, nevertheless, be binding upon the Parties with the same force and effect as though the unenforceable part had been severed and deleted.

13. **COUNTERPARTS.**

This Agreement may be executed in one or more counterparts, all of which shall be deemed to be duplicate originals.

IN WITNESS WHEREOF, the Parties hereto have executed this Instrument as of the date first above written.

[illegible] Inc.

By: [signature]

Name: [illegible], Jr.

Title: CEO

SSJ Enterprises, LLC

By: ______________________

Street Sounds, LLC

By: [signature]

2/3 of stock goes to SSJ
1/3 of stock goes to Street Sounds LLC.

Page 4 of 4

IN WITNESS WHEREOF, the Parties hereto have executed this instrument as of the date first above written.

Note: 2/3 of Share Profit to SSJ Enterprises, LLC + 1/3 of Share Profit to Street Search, LLC

ICOA, Inc.

By:

Name:

Title: C.F.O.

SSJ Enterprises, LLC

By:

Stephen S. John

Street Search, LLC

By: ______________________