UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SSJ ENTERPRISES, LLC and STREET SEARCH, LLC, Plaintiffs<br><br>vs.<br><br>ICOA, INC., GEORGE STROUTHOPOULOS, and ERWIN VAHLSING, JR., Defendants | C.A. No. 2004-0435/T |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Introduction**

Defendants' have moved for partial summary judgment dismissing Count IV of the complaint (fraud as against defendants Strouthopoulos and Vahlsing individually). Their burden on that motion is to show, first, that there is no genuine dispute as to certain material facts, and, second, that those undisputed facts entitle them to judgment *as a matter of law.*

Plaintiffs have, in part, carried their first burden: it is indeed undisputed that Mssrs. Strouthopoulos and Vahlsing, when they negotiated with Plaintiffs (and signed) the contract that is the core of this case, acted as agents for a disclosed principal, their employer, ICOA. Indeed, that fact is implied – if not directly alleged – in the complaint itself: how, after all, could ICOA be liable on its contract with Plaintiffs,

unless Mssrs. Strouthopoulos and Vahlsing were acting as ICOA's agents when they negotiated and (in Vahlsing's case) signed it?

Plaintiffs utterly fail on the second half of their burden: from the fact that Strouthopoulos and Vahlsing acted as agents for a disclosed principal, it does not follow *as a matter of law* that they cannot be personally liable for fraudulently misrepresenting their own and their principal's intentions regarding the contract they were negotiating. Defendants' motion thus collapses for want of support in the law.

Further, as we will point out, there are ample facts that would justify a jury in concluding that Strouthopoulos and Vahlsing acted in a dual capacity, as alleged in the complaint, and that they misrepresented themselves and their employer in negotiating the contract.

**Facts**

Plaintiffs agree that the facts set forth in items 1 through 9 and 11 and 12 of defendants' Statement of Undisputed Facts are, indeed, undisputed, although the only ones material to this motion are that Strouthopoulos and Vahlsing, when they negotiated the contract with plaintiffs, were acting as duly authorized agents of ICOA.

Plaintiffs hotly dispute the highlighted wording of item 10 of the Statement of Undisputed Facts (which is echoed in the Vahlsing and Strouthopoulos affidavits):

> 10. On or about February 20, 2004, ICOA, by and through Vahlsing, designed and produced a writing to SSJ and Street Search ***that reflected a draft or outline of a possible business structure or arrangement*** by and among ICOA, SSJ and Street Search ***while the parties continued to discuss and/or negotiate a potential business relationship.*** This writing was signed by Vahlsing, in his capacity as ICOA's Chief Financial Officer.

The highlighted words, in fact, are the core dispute in this case – although we do not believe they are actually "material" for purposes of this motion for summary judgment. Plaintiffs contend that the "Services Agreement" (Exhibit A to the complaint) that calls itself a contract, reads like a contract, purports to be a final expression of a contract, and is signed by the parties like a contract is, indeed, a contract. Defendants take the objectively ludicrous position that the document is not a contract, but merely a "placeholder," a platform for future negotiation.

If the document itself is not enough to place the highlighted words in the "disputed" column, for summary judgment purposes (if indeed they are material), we need look no further than the following deposition testimony of Stephen Jemal, principal of SSJ Enterprises, under examination by Mr. Mulhearn:

78

Now, it is SSJ's contention that it has a contract or an agreement with ICOA, correct?
A. I have a contract with ICOA, correct.
Q. SSJ does?
A. And Street Search.

*******************************************************

79

Q. Okay. I'm going to show you Exhibit A to SSJ's complaint. Do you know what that is?
A. This is the cover sheet of our agreement.
Q. What do you mean cover sheet?
A. This is the first page of our contract.

96

Q. Now, you continue to reference a contract or an agreement during the course of your testimony today. At some point, was there some writing

97

produced or entered into between the parties to address whatever business relationship would come to fruition or ultimately be formed?
A. Sure. You handed it to me a few minutes ago.
Q. Do you recall where that came from?
A. That came from George Strouthopoulos and Erwin Vahlsing.
Q. Did you have an understanding as to what that writing was?
A. That was a contract.
Q. For what?
A. For the services that I articulated which clearly articulates what our compensation was to be.
Q. All right. Do you recall when that was provided to you, that writing?
A. February of '04.
Q. What did you do when you received that writing?
A. I signed it.
Q. Did you have occasion to review it?
A. I read it.

Q. Did you understand it?
A. I believe so.
Q. Did you have any questions, comments, suggestions

98

or revisions to that writing?
A. I don't think so.

98

Q. Did you have an understanding as to what scope of services that SSJ may be asked to provide for ICOA --
A. Sure.
Q. -- if the parties moved forward with their business relationship?
A. Well, at that point we have a signed contract. So we were already moving forward.

131

Q. At any time, did SSJ ever indicate, delineate or otherwise articulate to ICOA why it believed it was entitled to some form of compensation?
A. Absolutely. I have a contract. You didn't

132

honor it. You got $2 million of money. You didn't pay me one red cent yet. I'm due 30 million shares of stock and 40 million warrants.
Q. And what did SSJ base that position on as it endeavored to negotiate with ICOA?
A. There was no negotiating. At that point, it's the summer of '04. I already have a contract that's in full force that's been honored to its fruition and has still yet to get paid.

## **Argument**

1. The defense argument -- that Strouthopoulos and Vahlsing cannot be personally liable for fraud, because in negotiating the contract between Plaintiffs and ICOA they acted as agents for a disclosed principal – is a *non sequitur.*

Defendants' argument is neatly summarized in the following statement from their memorandum: "At all times both Strouthopoulos and Vahlsing were acting in their capacities as officers of ICOA, and not in their individual capacities, and, thus, they were agents of a disclosed principal and cannot be held personally liable." For this they rely on the black letter rule of agency law that an agent who acts for a disclosed principal in negotiating a contract is not himself liable on that contract, citing *Kenney Mfg. Co. v. Starkweather & Shepley, Inc.*, 643 A.2d 203 (RI 1994).

From the premise that Strouthopoulos and Vahlsing cannot be held personally liable on the contract they negotiated for their disclosed principal, ICOA, they ask the court to conclude – as a matter of law – that they cannot be held personally liable for fraud perpetrated in the course of the negotiations. That, of course, is a *non sequitur.* Defendants cite no authority – and we are not aware of any – for the proposition that an agent for a disclosed principal cannot be personally liable for a fraud perpetrated in the course of contract negotiations on behalf of the principal.

Plaintiffs do not seek to hold Strouthopoulos and Vahlsing personally liable on the *contract* they negotiated for ICOA, only for the fraudulent misrepresentations that they and their principal actually intended to honor the contract they were making.

Defendants, therefore, are not entitled to summary judgment, and the court must deny their motion.

2. There is ample evidence that would permit a jury to conclude that Strouthopoulos and Vahlsing, in negotiating with Plaintiffs, acted both for ICOA and for themselves, when they misrepresented their own and ICOA's intentions.

Defendants commit yet another *non sequitur*: they suppose that if you act as an agent for a disclosed principal, *ipso facto* you cannot act also for yourself, that there is no such thing as acting in a dual capacity. That is simply not true.

There is evidence in this case – documents and deposition testimony – that would permit a jury to find the following additional facts, most of which are really undisputed:

Strouthopoulos and Vahlsing, as CEO and CFO of ICOA, were entitled to six figure salaries. They also were major shareholders in ICOA, holding 9 million and 5 million shares, respectively. However, by the time plaintiffs arrived on the scene in January 2004, ICOA was in desperate financial straits. It had no line of credit, and its cash was insufficient to meet payroll – including the salaries of Strouthopoulos

and Vahlsing. ICOA needed a quick cash infusion of at least $2 million if it was to remain a going concern and to avoid a liquidation that would have cost Strouthopoulos and Vahlsing their six figure salaries and rendered their ICOA stock worthless.

Hence, one of plaintiffs' main jobs under the contract with ICOA – under which their compensation would be stock only, no cash – was to secure desperately needed financing for ICOA. The contract provided for them to receive ICOA stock as various stages ("tranches" was the contract term) of funding were achieved. Upon receipt of the full amount of the $2 million ICOA needed, plaintiffs would be entitled to 30 million shares of ICOA stock. Plaintiffs, by introducing and touting ICOA to Cornell Capital Partners, were able to secure the needed funding right away[1], saving ICOA – and Strouthopoulos and Vahlsing – from financial ruin.

The ungrateful defendants have not paid plaintiffs the agreed compensation – or indeed any compensation at all – for this financial rescue. If ICOA had performed its end of the bargain, plaintiffs would have held 30 million shares of ICOA stock – more than twice as many as Strouthopoulos and Vahlsing. Strouthopoulos and Vahlsing were more than willing to dangle this prospect before plaintiffs, as an inducement to pull their chestnuts from the fire, but were unwilling to have ICOA

---

[1] ICOA received a term sheet from Cornell the very day ICOA sent the proposed contract to plaintiffs. The financing closed just four weeks later.

perform a bargain that would have so diluted their own positions. Hence, instead of performing, their response to the rescue was to deny there ever was a bargain, to claim that the document they prepared and signed and held out to plaintiffs as a contract was really nothing more than a platform for further negotiation after the fact.

These facts would permit a jury to conclude that Strouthopoulos and Vahlsing, in their dealings with plaintiffs, acted in their own selfish interests, as well as in the interest of ICOA, that they secured personal financial salvation by seducing plaintiffs with false promises they had no intention of keeping or allowing ICOA to keep. In other words, the jury could very well conclude that Strouthopoulos and Vahlsing committed *fraud.*

For this reason, too, the court must deny the motion for summary judgment.

## Conclusion

For the foregoing reasons, the court should deny the motion for partial summary judgment.

Respectfully submitted,

Howard E. Walker (#1085)
P.O. Box 299
Hope Valley, Rhode Island 02832
Tel. (401) 539-6767
Fax. (401) 539-0066
E-mail: hewlaw@direcway.com

Dated: December 1, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of this objection and memorandum upon the following counsel by email and first class mail on December 1, 2005.

Christopher M. Mulhearn
Ferrucci Russo P.C.
55 Pine Street
4th Floor
Providence RI 02903

Howard E. Walker (#1085)